**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Christine Pocha, | Civil No. 15-475 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Robert McDonald, Secretary of the United States Department of Veterans Affairs, | |
| Defendant. | |

Michael A. Fondungallah, Esq., Fondungallah & Kigham, LLC, counsel for Plaintiff.

David W. Fuller, Assistant United States Attorney, United States Attorney's Office, counsel for Defendant.

**INTRODUCTION**

Plaintiff Christine Pocha ("Dr. Pocha") filed this lawsuit after a Disciplinary Appeals Board ("DAB") sustained her discharge from the Minneapolis VA Health Care System ("Minneapolis VA"). Dr. Pocha seeks the Court's review of the DAB's decision under 38 U.S.C. § 7462(f). (Doc. No. 15.) For the reasons stated below, the Court affirms the DAB's decision.

## BACKGROUND

**I.     Revocation of Privileges and Discharge from Minneapolis VA**

The U.S. Department of Veterans Affairs ("VA") is an executive department led by Secretary Robert McDonald, Defendant in this case. The VA, through the Veterans Health Administration ("VHA"), operates a national health care system that includes the Minneapolis VA Health Care System ("Minneapolis VA"). From 2008 until the 2014 discharge at issue in this case, Dr. Pocha was a full-time permanent employee of the Minneapolis VA. (AR_01209, AR_01900.)[1] Specifically, Dr. Pocha worked as a staff physician in gastroenterology and hepatology, and she regularly performed colonoscopies. (AR_00054-55, AR_01340, AR_01900.)

In October 2012, Aasma Shaukat ("Dr. Shaukat") became the Chief of the Gastroenterology Section of the Minneapolis VA, and in that position, she was Dr. Pocha's supervisor. (AR_00274-75.) Shortly after becoming Section Chief, Dr. Shaukat developed concerns about Dr. Pocha's performance and discussed them with her supervisor, Dr. Kristin Nichol ("Dr. Nichol"), the Chief of the Primary Care Patient Service Line. (AR_00275-76.) As a result of this discussion, Dr. Shaukat performed an administrative review of Dr. Pocha's colonoscopies. (AR_00276-78.) After Dr. Shaukat's review revealed additional concerns, Dr. Nichol initiated Focused Professional Practice Evaluation ("FPPE") for Dr. Pocha. (AR_00123-28, AR_00278, AR_01223-26.)

---

[1]     All citations to "AR_XXXXX" are citations to the Administrative Record.

In a memorandum dated October 4, 2013 (the "FPPE Initiation Memo"), Dr. Nichol advised Dr. Pocha of her placement on FPPE (AR_01223-26.) The FPPE Initiation Memo identified the trigger prompting FPPE as: "[m]ore than two cases per year . . . which the PSL director . . . determines represent significant quality of care concerns." (AR_01223.) According to the FPPE Initiation Memo, this trigger was established within the Minneapolis VA's ongoing practice monitoring criteria, and the trigger required Dr. Pocha's placement on FPPE. (*Id.*) In addition, the FPPE Initiation Memo identified two privileges subject to FPPE: (1) basic gastroenterology; and (2) colonoscopy and polypectomy. (AR_01224.) It also described expectations for Dr. Pocha in four areas: (1) documentation; (2) colonoscopy competence; (3) quality of care; and (4) GI clinic performance. (AR_01224-25.) The FPPE was initially intended to last three months, but it was extended fourteen days to accommodate an additional in-person observation of Dr. Pocha.[2] (AR_00040, AR_01225.)

After considering multiple options, Dr. Nichol and Kent Crossley ("Dr. Crossley"), the Chief of Staff of the Minneapolis VA, appointed Dr. Shaukat as Dr. Pocha's FPPE evaluator. (AR_00030-33, AR_00128-32.) Dr. Nicol and Dr. Crossley selected Dr. Shaukat in light of Dr. Shaukat's credentials and experience. (AR_00032, AR_00129-31.) As Dr. Pocha's FPPE evaluator, Dr. Shaukat personally observed Dr. Pocha's performance of procedures (specifically, colonoscopies) and

---

[2] Ultimately, the in-person observation did not take place, as Dr. Pocha was on sick leave on the day of the scheduled observation. (AR_00040-41.)

reviewed medical records prepared by Dr. Pocha.  (*E.g.,* AR_00282-86, AR_00294-99.)  On November 8, 2013; December 11, 2013; January 3, 2014; and January 21, 2014; Dr. Pocha received an FPPE report from Dr. Nichol based on Dr. Shaukat's observations and reviews.  (AR_01348-92, AR_01404-51, AR_01489-582, AR_01613-42.)  Dr. Pocha responded to each FPPE report in writing.  (AR_01452-81, AR_01597-609, AR_01780-891.)

During the FPPE, Dr. Crossley decided to add a second FPPE evaluator for Dr. Pocha.  (AR_00038.)  After considering multiple possible evaluators, the Minneapolis VA asked Mohammed Wehbi ("Dr. Wehbi"), Chief of Gastroenterology at the Atlanta VA, to fill this role.  (AR_00038-40.)  Dr. Shaukat recommended Dr. Wehbi, with whom she had trained at Emory University for approximately three years.  (AR_00319-20, AR_00438.)  Although Dr. Shaukat and Dr. Wehbi knew each other as professional colleagues, they did not have a personal relationship.  (AR_00320-21, AR_00438-39.)  Further, to facilitate Dr. Wehbi's independent evaluation of Dr. Pocha, Dr. Wehbi avoided speaking to Dr. Shaukat during Dr. Pocha's FPPE.  (AR_00321, AR_00441.)  Dr. Wehbi reviewed video recordings of Dr. Pocha's colonoscopies, and he reviewed medical records prepared by Dr. Pocha.  (AR_00441-42.)  Dr. Wehbi did not personally observe Dr. Pocha performing any procedures.  (AR_00441-42, AR_02007.)

On January 9, 2014, prior to the completion of Dr. Pocha's FPPE, Patrick Kelly ("Mr. Kelly"), the Director of the Minneapolis VA, summarily suspended Dr. Pocha's privileges upon the recommendation of Dr. Crossley.  (AR_00042-49, AR_00326, AR_01646-51.)  A letter from Mr. Kelly (the "Suspension Letter") advised Dr. Pocha of

4

the suspension and explained that it was based on two colonoscopies performed by Dr. Pocha in December 2013 and January 2014, which "raised [concerns] that aspects of [Dr. Pocha's] clinical practice [did] not meet the accepted standards of practice and potentially constitute[d] an imminent threat to patient welfare." (AR_01646-48.) As a result of the suspension, Dr. Pocha immediately lost clinical privileges on a temporary basis, and she moved to a non-clinical position. (*Id.*) The Minneapolis VA did not review Dr. Pocha's summary suspension in any process separate from the FPPE. (AR_02190, AR_02192-93.)

On February 4, 2014, the Executive Committee of the Medical Staff ("ECMS") met for approximately five hours to discuss Dr. Pocha's privileges. (AR_00049-54, AR_01993-2029.) The ECMS voted unanimously to revoke Dr. Pocha's gastroenterology privileges, voted 10-2 to revoke her paracentesis privileges, and voted 8-4 to revoke her core medicine privileges. (AR_00052-53, AR_02027-29.) On March 12, 2014, Dr. Crossley proposed revocation of Dr. Pocha's clinical privileges and termination of Dr. Pocha's employment at the Minneapolis VA. (AR_01957-92.)

After receiving Dr. Crossley's proposal, Mr. Kelly reviewed the evidence file and met with Dr. Pocha and her attorney. (AR_00328-32.) In a letter dated May 16, 2014 (the "Removal & Revocation Letter"), Mr. Kelly advised Dr. Pocha of his decision. (AR_02082-AR_2083.) According to the Removal & Revocation Letter, Mr. Kelly

5

revoked Dr. Pocha's gastroenterology privileges[3] based on "[f]ailure to meet acceptable standards in the areas of documentation, colonoscopy competence, and quality of care." (AR_02082, *see also* AR_00331-33.)  Mr. Kelly did not revoke Dr. Pocha's paracentesis privileges or her core medicine privileges.  (AR_00332.)  Still, Mr. Kelly terminated Dr. Pocha's employment effective May 22, 2014.  (AR_00332-33, AR_02082.)

## II. DAB Hearing and Decision

After receiving notice of her termination, Dr. Pocha appealed Mr. Kelly's decision to a DAB.[4]  The DAB appointed to consider Dr. Pocha's appeal consisted of three physicians employed by VA medical centers:  a surgeon, a primary care physician, and a gastroenterologist.  (AR_00002.)  The hearing took place on September 17, 18, and 19, 2014, at the Minneapolis VA.  (AR_00001-1208, AR_03586.)  The DAB considered whether Dr. Pocha met acceptable standards related to:  (1) documentation, (2) colonoscopy competence, and (3) quality of care.  (AR_03587.)  It also reviewed Mr. Kelly's decision to revoke Dr. Pocha's gastroenterology privileges and discharge her from the Minneapolis VA.  (AR_03586.)

At the hearing, the Minneapolis VA introduced five witnesses:  Dr. Crossley, Dr. Nichol, Dr. Shaukat, Mr. Kelly, and Dr. Wehbi.  Dr. Shaukat and Dr. Wehbi—both

---

[3]     The Court notes that the testimony and documents in the record appear to use the terms "gastroenterology" and "GI" interchangeably.  While Mr. Kelly testified that he decided to revoke Dr. Pocha's "GI privileges," the Court uses the term "gastroenterology privileges" for consistency.

[4]     The DAB had jurisdiction to review Dr. Pocha's case under 38 U.S.C. § 7462(a)(1).

6

gastroenterologists—gave detailed testimony about Dr. Pocha's colonoscopy competence and provided commentary on video recordings of Dr. Pocha's colonoscopies played at the hearing. (*See generally* AR_00265-322, AR_00370-537, AR_00547-637.) Dr. Pocha introduced eight witnesses: Dr. Anna Sasaki, Dr. Peter Meier, Dr. Paola Ricci, Dr. Michael Levitt, Dr. Eric Dieperink, Dr. Robert Gill, Dr. Samuel Ho, and Dr. George Logan.[5] Dr. Pocha also testified on her own behalf.

In addition to hearing from witnesses, the DAB received many documents into evidence, including the evidence file considered by the ECMS at the February 4, 2014 meeting and the minutes of the ECMS meeting. The DAB considered documents including medical records of Dr. Pocha's cases, the four FPPE reports and Dr. Pocha's responses to them, video recordings of procedures performed by Dr. Pocha, and letters by multiple physicians submitted in support of Dr. Pocha.

Following the hearing, the DAB issued a detailed decision. (AR_03586-623.) The DAB sustained the charge that Dr. Pocha did not meet the standard of care for colonoscopy and sustained the revocation of Dr. Pocha's privileges and Dr. Pocha's discharge. Specifically, the DAB reached the "unanimous opinion that Dr. Pocha failed to demonstrate the acceptable standard of colonoscopy competence," and it found that the

---

[5]   Of these witnesses, all but Dr. Sasaki and Dr. Dieperink are gastroenterologists. (AR_00640, AR_00692, AR_00854, AR_00896-98, AR_00919, AR_01013, AR_01039, AR_01066.) Although Dr. Levitt is a gastroenterologist, he does not perform colonoscopies. (AR_00896-98.) Only Dr. Ricci and Dr. Meier personally observed Dr. Pocha perform colonoscopies, and they did so prior to the FPPE period. (AR_00717-18, AR_00745-46, AR_00858, AR_00872.)

"preponderance of evidence sustained the decision to revoke [Dr. Pocha's] gastroenterology privileges and remove her from the Federal service." (AR_03606.) The DAB did not sustain the charges that Dr. Pocha failed to meet acceptable standards related to documentation and quality of care. (AR_03623.) On January 9, 2015, James A. Tuchschmidt, the Acting Principal Deputy Under Secretary for Health, notified Dr. Pocha of his decision to execute the DAB's decision. (AR_03585.) Dr. Pocha now seeks judicial review of the DAB's decision.

## DISCUSSION

### I. Jurisdiction and Standard of Review

Under 38 U.S.C. § 7462, the Court has jurisdiction to review the DAB's final decision to sustain Mr. Kelly's revocation of Dr. Pocha's gastroenterology privileges and discharge of Dr. Pocha from employment at the Minneapolis VA. 38 U.S.C. § 7462(f)(1). Federal law also provides the standard of review that the Court applies:

> In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding or conclusion found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) obtained without procedures required by law, rule, or regulation having been followed; or
> (C) unsupported by substantial evidence.

38 U.S.C. § 7462(f)(2).[6] This standard "mirrors the standards for judicial review of other administrative actions, and analogous administrative law precedents are applicable." *Abaqueta v. United States*, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003) (citing *Ward v. Brown*, 22 F.3d 516, 521-22 (2d Cir. 1994)).

## II. Whether the Minneapolis VA and the DAB Failed to Follow Required Procedures

Dr. Pocha makes several arguments that the Court considers in light of its duty to set aside agency actions "obtained without procedures required by law, rule, or regulation having been followed."[7] 38 U.S.C. § 7462(f)(2)(B). Although an agency must follow its own rules, an agency's interpretation of its own rule is generally entitled to deference. *Perez v. Loren Cook Co.*, 803 F.3d 935, 938-39 (8th Cir. 2015); *see also Kreso v. McDonald*, --- F. App'x ----, ----, Civ. No. 14-1455, 2015 WL 7003341, at *4 (10th Cir. Nov. 12, 2015). The Court defers to the agency's interpretation unless it finds that "a regulation is contrary to unambiguous statutory language, that the agency's interpretation of its own regulation is plainly erroneous or inconsistent with the regulation, or that application of the regulation [is] arbitrary or capricious." *El Dorado Chem. Co. v. U.S. Envtl. Prot. Agency*, 763 F.3d 950, 958 (8th Cir. 2014) (quoting *Nack v. Walburg*, 715 F.3d 680, 684 (8th Cir. 2013)).

---

[6] Some of Dr. Pocha's arguments under this standard are less than clear, and the Court makes sense of them to the best of its ability.

[7] Dr. Pocha does not assert that the VA violated her constitutional due process rights.

9

### A.   Whether the Minneapolis VA Failed to Follow Procedures Regarding its Implementation of FPPE

According to Dr. Pocha, the Minneapolis VA failed to follow established procedures with respect to Dr. Pocha's FPPE.  Dr. Pocha makes three arguments.  First, she contends that the Minneapolis VA improperly initiated FPPE.  The VA Bylaws provide the framework for FPPE and state that the Minneapolis VA places a physician under FPPE when there are concerns about the physician's ability to "provide safe, high quality patient care."  (AR_01314.)  They further provide that the ECMS establishes triggers for placing a physician under FPPE.  (*Id.*)[8]  Here, the FPPE Initiation Memo expressly identified the trigger for Dr. Pocha's placement on FPPE—more than two cases per year involving significant quality of care concerns—and provided Dr. Shaukat's

---

[8]   The relevant provision of the VA Bylaws (Art. VI, § 6, ¶ B) states in full:

> The medical center will place medical staff members under focused professional practice evaluation when:
>   1. they are initially privileged,
>   2. their privileges are increased or modified, and/or
>   3. issues arise regarding a medical staff member's ability to provide safe, high quality patient care during the course of ongoing practice monitoring. (Criteria for ongoing practice monitoring are established and approved by the Executive Committee of the Medical Staff.  These criteria explicitly define the triggers that require placing a medical staff member under a period of focused professional practice evaluation.)

(AR_01314.)

administrative review in support. (AR_01223; AR_01334-36.) As such, the Minneapolis VA followed the VA Bylaws in initiating FPPE.[9]

Second, Dr. Pocha claims that FPPE was improperly applied to all of her privileges. The VA Bylaws limit the scope of FPPE to "the privilege(s) for which there is a concern." (AR_01315.)[10] The FPPE Initiation Memo expressly identified that FPPE applied to Dr. Pocha's gastroenterology privileges and colonoscopy and polypectomy privileges. (AR_01224.) Although there is evidence that Dr. Shaukat conducted a broad review of Dr. Pocha's practice in her role as FPPE evaluator, there is no evidence that privileges other than those named were affected by FPPE. Indeed, Mr. Kelly revoked only Dr. Pocha's gastroenterology privileges. Accordingly, the Minneapolis VA followed the VA Bylaws with respect to the scope of FPPE.

Finally, Dr. Pocha contends that the FPPE was biased against her. She claims that Dr. Shaukat was a biased reviewer, and that Dr. Wehbi was biased because he was

---

[9]  Although the record does not include a document with written criteria for ongoing practice monitoring established by the ECMS, Dr. Crossley testified about such criteria. (AR_00025-26.) There is no evidence that such criteria did not exist or that the trigger identified in the FPPE Initiation Memo was not in fact an established trigger.

[10]  The relevant provision of the VA Bylaws (Art. VI, § 6, ¶ E) states in full:

> If a medical staff member is being placed under a period of focused professional practice evaluation due to concerns about his/her ability to provide safe, high quality patient care, the focused professional practice evaluation will only apply to the privilege(s) for which there is a concern; other existing privileges in good standing will not be affected by this decision.

(AR_01315.)

11

recommended by Dr. Shaukat. The Court's review of the record reveals no evidence of unfair bias against Dr. Pocha in the FPPE process. This is consistent with the review of the DAB, which discussed the possibility of bias at great length and concluded that Dr. Pocha's FPPE was fair:

> [T]he Board concluded that the decision to proceed with an FPPE process was appropriate and that the process was objective and free from bias by Dr. Shaukat and Dr. Nichol. . . . The Board accepts that Dr. Wehbi was vetted and determined to be an unbiased reviewer by the leadership of the Minneapolis VA, and that this leadership placed appropriate safeguards in the process to maintain his objectivity.

(AR_03618.) Further, Dr. Pocha does not claim that the Minneapolis VA violated the VA Bylaws or the VHA Handbook with respect to its selection of Dr. Shaukat and Dr. Wehbi as evaluators. The Court concludes that the Minneapolis VA's initiation and implementation of Dr. Pocha's FPPE adhered to required procedures.

### B. Whether the Minneapolis VA Failed to Follow Procedures Regarding Revocation of Dr. Pocha's Gastroenterology Privileges

Dr. Pocha also contends that the Minneapolis VA did not follow procedures when it revoked her gastroenterology privileges. Specifically, she argues that the VA Bylaws required the ECMS to include a "peer" of Dr. Pocha when it met to discuss Dr. Pocha's case on February 4, 2014. The VHA Handbook provides the procedures for revoking a practitioner's privileges. It states that revocation of privileges—as opposed to reduction of privileges—"refers to the permanent loss of clinical privileges." (AR_01274.) It further states that "[r]ecommendations to revoke a practitioner's privileges must be made by the Executive Committee of the Medical Staff, based upon review and deliberation of clinical performance and professional conduct information." (AR_01279.) The Court's

review of the VHA Handbook and VA Bylaws reveals no provision requiring the ECMS, when making recommendations to revoke a physician's privileges, to include a "peer" of the physician potentially subject to revocation.[11] The Court concludes that the Minneapolis VA followed required procedures in its revocation of Dr. Pocha's gastroenterology privileges.

    **C.    Whether the Minneapolis VA Failed to Follow Procedures Regarding Summary Suspension of Dr. Pocha's Privileges**

Next, Dr. Pocha argues that the Minneapolis VA did not follow established procedures regarding summary suspension of Dr. Pocha's privileges. She makes two arguments. First, Dr. Pocha contends that the initiation of summary suspension violated the VHA Handbook's "imminent danger" requirement. Under the VHA Handbook, a practitioner's "[c]linical privileges may be summarily suspended when the failure to take such an action may result in an imminent danger to the health of any individual." (AR_01275.) That is, the Minneapolis VA can impose summary suspension when continuing to permit a physician to practice "may" result in an imminent danger to "any" individual.[12] Here, the Suspension Letter from Mr. Kelly stated that Dr. Pocha's

---

[11]     Dr. Pocha points to a provision of the VA Bylaws that states that in an action to reduce a practitioner's privileges, the practitioner may request a review, and a member of the review panel must be a "peer." (*See* AR_01315.) This provision is inapposite because it applies to reduction of privileges, not revocation of privileges, and because it requires a review panel, not the ECMS, to include a "peer."

[12]     The VHA Handbook does not require a finding that any particular patient was in fact facing imminent danger. Indeed, in the Court's view, a rule requiring a finding of actual imminent danger prior to summary suspension would place patients at undue risk.

privileges were summarily suspended because two colonoscopies performed by Dr. Pocha signaled that Dr. Pocha's clinical practice could "potentially constitute an imminent threat to patient welfare." (AR_01646.) The Suspension Letter specifically indicated that mistakes made by Dr. Pocha would have put a particular patient at risk for serious complications if another physician had not intervened. (*Id.*) The Court finds that Minneapolis VA properly followed the VHA Handbook because it determined that "imminent danger" could result from Dr. Pocha's continued performance of colonoscopies before it summarily suspended Dr. Pocha's privileges.

Second, Dr. Pocha maintains that the Minneapolis VA failed to properly review the summary suspension of her privileges. The VHA Handbook provides:

> When privileges are summarily suspended, the comprehensive review of the reason for the summary suspension must be accomplished within 30 calendar days of the suspension with recommendations to proceed with formal procedures for reduction or revocation of clinical privileges forwarded to the facility Director for consideration and action.

(AR_01275.) Here, it is undisputed that the Minneapolis VA did not conduct a review of the summary suspension apart from the FPPE process (which began months before the summary suspension). Thus, the issue is whether the FPPE's review process met the VHA Handbook's requirement for a "comprehensive review of the reason for the summary suspension . . . within 30 calendar days." (*See id.*)

The Court rejects Dr. Pocha's argument. The Minneapolis VA interpreted the VHA Handbook's provision as not requiring a comprehensive review that is independent from FPPE's comprehensive review. (AR_02190, AR_02192-93.) The VHA Handbook lacks specific guidance for the comprehensive review, and the Court's review of the

14

record suggests that a separate comprehensive review of the summary suspension would have unnecessarily duplicated the FPPE.  As such, the Court finds that the Minneapolis VA's construction of the VHA Handbook is reasonable and not plainly erroneous.  *See El Dorado*, 763 F.3d at 958.

Further, Mr. Kelly's decision to revoke Dr. Pocha's gastroenterology privileges and discharge Dr. Pocha from employment at the Minneapolis VA stemmed directly from the FPPE and the ECMS's recommendation.  The Court's review of the record suggests that Mr. Kelly would have approved the revocation and discharge regardless of the summary suspension.  As such, even if the Minneapolis VA failed to follow the required procedures for summary suspension, such failure would have little if any bearing on the revocation and discharge—the two actions that the Court now reviews.

**D.  Whether the DAB Failed to Follow Procedures Related to the DAB Hearing**

Dr. Pocha's final procedural claim is that the DAB failed to follow required procedures related to the DAB hearing.  She argues that the DAB improperly refused to receive evidence that she offered at the hearing and failed to consider the possible inauthenticy of evidence offered by the Minneapolis VA.  Further, she claims that the DAB was biased against her.  Dr. Poch does not claim that the DAB violated a particular statute, rule, or regulation.  Based on its review of the record, the Court concludes that Dr. Pocha's arguments regarding the DAB's procedures and supposed bias lack merit.  Accordingly, the Court finds that the DAB's decision in this case was not "obtained

without procedures required by law, rule, or regulation having been followed." *See* 38 U.S.C. § 7462(f)(2)(B).

### III. Whether the DAB's Factual Findings Were Unsupported by Substantial Evidence

The Court next considers Dr. Pocha's contentions in light of its duty to set aside an agency's factual findings if they are "unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2)(C). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the [agency's] conclusion." *Maverick Transp., LLC v. U.S. Dep't of Labor*, 739 F.3d 1149, 1153 (8th Cir. 2014) (quoting *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)); *see also Kreso*, 2015 WL 7003341, at *2. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

#### A. Whether the DAB's Findings Regarding Dr. Pocha's Colonoscopy Competence Were Unsupported by Substantial Evidence

Dr. Pocha argues that the DAB's factual findings regarding her colonoscopy competence were unsupported by substantial evidence. She makes two arguments. First, Dr. Pocha claims that the DAB erroneously concluded that Dr. Ricci did not observe Dr. Pocha perform any colonoscopies.[13] Dr. Pocha is correct that Dr. Ricci testified that

---

[13] Dr. Pocha also argues that the DAB incorrectly concluded that Dr. Meier never observed Dr. Pocha perform any procedures, but Dr. Pocha's characterization of the DAB's conclusion is incorrect. The DAB noted that Dr. Meier assisted Dr. Pocha with colonoscopies prior to his retirement in August 2013. (AR_03594.)

16

she observed Dr. Pocha perform two colonoscopies prior to July 2012.  (AR_00858, AR_00872.)  However, given that Dr. Ricci observed only two colonoscopies and did so prior to the initiation of FPPE in this case, the Court concludes that the DAB's decision to give no weight to Dr. Ricci's opinions regarding Dr. Pocha's colonoscopy competency was reasonable.  (*See* AR_03593.)

Second, Dr. Pocha contends that the DAB improperly weighed the evidence by crediting testimony favorable to the Minneapolis VA while discrediting testimony favorable to Dr. Pocha.  Based on the Court's review of the record, the Court finds that the DAB reasonably gave substantial weight to Dr. Shaukat's testimony.  Dr. Shaukat has expertise in gastroenterology and colonoscopy, and she gave detailed testimony based on personal observation of Dr. Pocha's colonoscopies during the FPPE period, video recordings of Dr. Pocha's colonoscopies, and extensive review of medical records.  The Court also finds that the DAB reasonably gave little or no weight to testimony by Dr. Meier, who did not observe Dr. Pocha during the FPPE period and whose testimony revealed hostility toward Dr. Shaukat and the Minneapolis VA.  Further, the DAB gave detailed explanations of its credibility determinations in its written decision.

In sum, the Court concludes that the record contained "evidence that a reasonable mind would accept as adequate to support" the DAB's finding that Dr. Pocha failed to demonstrate the acceptable standard of colonoscopy competence.  *See Maverick Transp.*, 739 F.3d at 1153.  Dr. Shaukat and Dr. Wehbi gave extensive and detailed testimony about shortcomings in Dr. Pocha's colonoscopy technique and judgment, and this testimony is enough to support the DAB's finding.  As such, the DAB's finding is not

"unsupported by substantial evidence," and the Court will not set it aside. *See* 38 U.S.C. § 7462(f)(2)(C).

## IV. Whether the DAB's Legal Conclusions Were Arbitrary and Capricious

Last, the Court considers Dr. Pocha's arguments in light of its duty to set aside an agency's legal conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7462(f)(2)(A). An agency's conclusion is arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Lerner v. Shinseki*, Civ. No. 12-565, 2013 WL 5592906, at *5 (W.D. Ky. Oct. 10, 2013). Still, the standard is "narrow," and the Court will not "substitute its judgment for that of the agency." *Nebraska v. U.S. Envtl. Prot. Agency*, --- F.3d ----, ----, Civ. Nos. 12-3084, 12-3085, 2016 WL 403655, at *2 (8th Cir. Feb. 3, 2016) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). Further, the Court will uphold a DAB penalty if it determines that the DAB "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts and the decision made." *Kreso*, 2015 WL 7003341, at *3 (citation omitted); *see also Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

### A.     Whether the Revocation and Discharge Were Arbitrary and Capricious

Dr. Pocha's final argument is that the penalty imposed by the Minneapolis VA and sustained by the DAB was excessive.  The Removal & Revocation Letter gives a detailed explanation of the basis for discharging Dr. Pocha and revoking her colonoscopy privileges.  (AR_02082-83.)  According to the Removal & Revocation Letter and Mr. Kelly's testimony at the DAB hearing, Mr. Kelly considered Dr. Pocha's years of VA service and her past work record, the seriousness of Dr. Pocha's shortcomings, the likelihood of Dr. Pocha's future improvement, the problems identified during Dr. Pocha's FPPE, the recommendation of the ECMS, and Dr. Pocha's written and oral comments. (AR_02082, AR_00328-34.)  In addition, Mr. Kelly testified that he decided to discharge Dr. Pocha because Dr. Pocha needed gastroenterology privileges to perform the role for which she had been hired.  (AR_00332-33.)  The DAB's written decision evidences the DAB's careful review of Mr. Kelly's decision to revoke Dr. Pocha's privileges and terminate her employment, including the evidence considered by Mr. Kelly and the rationale behind his decision.  In light of the record, including the DAB's written decision, the Court concludes that the DAB articulated "a rational connection" between the facts and its decision to sustain the revocation and discharge.  *See Kreso*, 2015 WL 7003341, at *3.  Thus, the revocation and discharge were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See* 38 U.S.C. § 7462(f)(2)(A).

## CONCLUSION

The Court finds no basis for setting aside the DAB's decision in this case. The Minneapolis VA and the DAB followed required procedures; the DAB's factual findings are supported by substantial evidence; and the DAB's legal conclusions, including its decision to sustain the penalty imposed on Dr. Pocha, are not arbitrary, capricious, an abuse of discretion, or contrary to law.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. The final decision of the Disciplinary Appeals Board, as executed by the Acting Principal Deputy Under Secretary for Health, is **AFFIRMED**.

2. Plaintiff Christine Pocha's Motion to Remand to the Department of Veterans Affairs (Doc. No. [15]) is **DENIED**.

3. Defendant Robert McDonald's Motion for Summary Judgment (Doc. No. [20]) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 10, 2016          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge